| | |
|---|---|
| TOMMIE ZAKER, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:21-cv-03060-KPF |
| Plaintiff, | CLASS ACTION |
| v. | |
| EBANG INTERNATIONAL HOLDINGS INC., DONG HU, and LEI CHEN, | |
| Defendants. | |

**RESPONSE IN SUPPORT OF BRIJESH BHAGAT'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS**

Lead Plaintiff movant Brijesh Bhagat respectfully submits this response memorandum of law in further support of his motion (ECF No. 12) and in opposition to the three remaining competing motions filed by Dr. Gowrisankar Naidu Galla, Galla Investments Inc., and Yan Yuan (the "Galla and Yuan Group") (ECF No. 10), Shahin Negahban (ECF No. 16), and Xiande Yang (ECF No. 25).

## I.     INTRODUCTION

On June 7, 2021, seven investors filed motions seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"): the Galla and Yuan Group (ECF No. 10), Brijesh Bhagat (ECF No. 12), Shahin Negahban (ECF No. 16), Ronald Antosko (ECF No. 17), Elad Rachevsky (ECF No. 20), Xiande Yang (ECF No. 25), and Eyerualen Befkadu (ECF No. 28). Antosko has withdrawn his motion, which this Court accordingly terminated. ECF Nos. 33, 34. Befkadu and Rachevsky have indicated their non-opposition to competing motions. ECF Nos. 35, 36. Yang, too, has noticed his non-opposition to competing motions filed by the same movants in a related action filed in the District of New Jersey. *See Zeva v. Ebang Int'l Holdings, Inc.*, 2:21-cv-09859-CCC-LDW (D.N.J. June 22, 2021) (ECF No. 19).[1] He should not be permitted to now take an inconsistent position in this action after having seen full lead plaintiff briefing in the *Zeva* action.[2] As to Mr. Negahban, his represented financial interest in this matter—$201,377.97—is facially and significantly less than Mr. Bhagat's estimated losses of $253,039.08.

---

[1] As noted in Mr. Bhagat's opening brief, the related *Zeva* action was filed after the instant case, and Mr. Bhagat will move the *Zeva* court to transfer that action to this Court for consolidation if he is appointed lead plaintiff in that case.

[2] Yang's counsel also filed the *Zeva* case in the District of New Jersey. Any attempt by Yang to seek lead plaintiff status here while abandoning his motion in the District of New Jersey would amount to improper gamesmanship.

That leaves just Mr. Bhagat and the Galla and Yuan Group. The PSLRA provides that courts are to "adopt a presumption that the most adequate plaintiff" is the person that "has the largest financial interest in the relief sought by the class" **and** who "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Mr. Bhagat readily satisfies both elements; the same cannot be said for the Galla and Yuan Group. Indeed, the Galla and Yuan Group has failed to demonstrate that it will fairly and adequately represent the interests of the class.

## II. ARGUMENT

### A. The Galla and Yuan Group Has Failed to Make a Prima Facie Showing of Adequacy Under Rule 23

Under the PSLRA, the person or group of persons with the largest financial interest becomes the presumptive lead plaintiff as long as that person or group "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The Galla and Yuan Group reports the largest financial interest, but its members' Joint Declaration (ECF No. 13-4) demonstrates the group to be nothing more than an eleventh-hour invention of its attorneys, fashioned for the sole purpose of aggregating losses in the hopes of winning the PSLRA's lead plaintiff contest.[3] Notwithstanding its two-member size, the Galla and Yuan Group lacks the cohesion necessary to carry out the duties of a lead plaintiff. Such a contrived group cannot satisfy Rule 23's adequacy requirement. Moreover, the vast majority of decisions from this district reject the appointment of groups of unrelated individuals absent a sufficient evidentiary basis to persuade the court that the

---

[3] Nowhere in the Galla and Yuan Group's motion for lead plaintiff appointment do its members ask to be considered individually, in the alternative. Indeed, when Galla and Yuan filed their motion, they did not know that Galla individually held the largest losses of any movant. They elected to move for lead plaintiff as a group without knowing what any other movant's losses would be. Because they moved as a group seeking to aggregate losses, they should be considered as an aggregated group.

group has not simply been assembled by attorneys for the purpose of establishing the greatest financial interest in the action. *See, e.g.*, *Jakobsen v. Aphria, Inc.*, No. 18 CIV. 11376 (GBD), 2019 WL 1522598, at \*2 (S.D.N.Y. Mar. 27, 2019) ("In this district, '[a]llowing lawyers to combine otherwise unrelated entities as joint lead plaintiffs would encourage the lawyers to drive the litigation.' …. Accordingly, because the Wan Group's members are unrelated investors without a pre-litigation relationship, they may not be jointly appointed as lead plaintiffs."); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621-22 (S.D.N.Y. 2015); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392-93 (S.D.N.Y. 2008); *In re DonnKenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997).

Courts in the SDNY assess a group's ability to fairly and adequately represent the interests of the class by considering the five *Varghese* factors: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." 589 F. Supp. 2d at 392. "The proposed plaintiff group has the burden of showing that aggregation is appropriate pursuant to the *Varghese* factors." *Jakobsen*, 2019 WL 1522598, at \*2. "'The overarching concern is whether the related members of the group can function cohesively and effectively manage the litigation apart from their lawyers.'" *Id.*

Galla and Yuan have no pre-litigation relationship. They only learned about each other through their counsel, and first spoke with each other during the afternoon of the day leadership motions were due:

> After discussing the allegations against Ebang, the procedural background of the Actions, the process of appointing a lead plaintiff in cases such as this, and attorneys' fees, we learned of each other's existence and similar willingness the litigate the claims of the Class…. Upon learning of each other's interest seeking

3

> appointment of lead plaintiff in this matter through our counsel, we communicated with one another and our counsel on Monday, June 7, 2021, at approximately 12:45 PM EST….

ECF No. 13-4, ¶¶8-9. This weighs heavily against their adequacy. *See Tan v. NIO Inc.*, No. 19-CV-1424-NGG-VMS, 2020 WL 1031489, at *4 n.5 (E.D.N.Y. Mar. 3, 2020) ("[T]he most rational inference to be drawn from the fact that each member … testified that they "contacted Levi & Korsinsky and [Bragar Eagel & Squire] to inquire about participating in the Actions ... [and] [t]hrough these discussions ... learned of each other's interest in serving as [l]ead [p]laintiff," … is that the law firms introduced the members to one another after each inquired separately …. Needless to say, this does not work in the NIO Investor Group's favor."); *Jakobsen*, 2019 WL 1522598, at *2-4 (finding a group inadequate because "its members offer no evidence that they all have a pre-litigation relationship" and otherwise fail to demonstrate that their group is not a lawyer-driven aggregation).

Galla and Yuan have had minimal involvement in the litigation so far, representing that they each independently spoke once with counsel and then once spoke together with counsel. In both instances, Galla and Yuan describe (without specificity) having engaged in nothing more than cursory discussions about the allegations in the *Zaker* and *Zeva* actions against Ebang, the lead plaintiff process, attorneys' fees (without indicating any negotiated fee), preliminary case strategy, and "the Actions that we will take to continue to ensure that the claims will be zealously and efficiently litigated."[4] ECF No. 13-4, ¶¶8-9. Their initial joint declaration does not state that they have even reviewed the lead plaintiff filings to date; it merely says they will review pleadings and filings in the future if appointed lead plaintiffs. *See id.* ¶¶16-17. In the *Zeva* action, Galla and Yuan

---

[4] In the *Zeva* action, Galla and Yuan submitted a belated second joint declaration with their lead plaintiff reply brief in an apparent attempt to bootstrap the deficient initial joint declaration. *See Zeva*, 2:21-cv-09859-CCC-LDW (D.N.J.) (ECF No. 25-2).

submitted a second joint declaration with their lead plaintiff reply brief in a belated attempt to resuscitate the deficient initial joint declaration. *See Zeva*, 2:21-cv-09859-CCC-LDW (D.N.J.) (ECF No. 25-2). This second joint declaration (which, Bhagat anticipates, Galla and Yuan will file in this case as well) adds little of substance: "Following the filing of our motion for appointment as co-lead plaintiffs on June 7, 2021, we received updates from our counsel as to the status of our motion, have discussed the motions filed by competing movants, and progression of the lead plaintiff briefing." *Id.* Their minimal involvement (implicitly recognized by the act of filing a belated second joint declaration) also weighs against their adequacy. *See Jakobsen*, 2019 WL 1522598, at *2-4 (finding a group's "members barely allege any involvement in the litigation thus far" by stating only that counsel appraised the members of lead plaintiff responsibilities and discussed the merits of the case and the members' losses, and the members agreed to file a joint motion for appointment as lead plaintiff and reviewed a complaint"); *Nakamura v. BRF S.A.*, No. 18-CV-2213 (PKC), 2018 WL 3217412, at *3 (S.D.N.Y. July 2, 2018) (finding minimal involvement in the litigation where the group's joint declaration was "vague as to their involvement in the litigation to date[,] stat[ing] only that they have reviewed the Complaint's allegations, and, 'after consulting with our counsel,' thereafter 'approved' the filing of this motion").

Galla and Yuan's plans for cooperation are conclusory, offering nothing more than a boilerplate commitment "to actively manage the prosecution of the Actions including reviewing documents, having joint calls, discussing through email any developments, participating in discovery, and exercising joint decision-making to execute a strategy to maximize the recovery of the entire Class." ECF No. 13-4, ¶12. Such a plan (if such nonspecific commitments can even be considered a plan) does not demonstrate the group's ability to supervise their counsel's prosecution

of the case on behalf of the class. *See Cohen v. Luckin Coffee Inc.*, 1:20-cv-01293-LJL, 2020 WL 3127808, at *4 (S.D.N.Y. June 12, 2020) ("The rote recitation of those factors does not provide evidence that any member of the group—much less the group as a whole—has had significant involvement in the litigation thus far."); *Kniffin v. Micron Tech, Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) ("Vague discussions of general communication protocols and status reports hashed out over preliminary conference calls [and] boilerplate plans for cooperation … do not satisfy this Court that [they] will be able to effectively manage this litigation.") (second alteration in original); *Jakobsen*, 2019 WL 1522598, at *3 (finding plans for cooperation to be "boilerplate," "vague and conclusory" where the joint declaration stated that the group discussed with counsel "a protocol for maintaining in regular contact with each other and with counsel" and committed to "the zealous prosecution of this case, "to exercise joint decision-making," and to "have periodic calls with counsel"); *Nakamura*, 2018 WL 3217412, at *3 (finding plans for cooperation to be insufficient where the joint declaration "states that they will 'oversee their counsel,' 'exercise joint decision-making,' 'actively monitor the activities of their counsel,'" "review and discuss 'significant case filings with our counsel through joint conference calls,'" and "'have established procedures for overseeing the progress of the litigation and communicating regularly between ourselves and our counsel'").

More importantly, the only specific procedural commitment Galla and Yuan make is to let a third-party arbitrator resolve disagreements between them over case supervision. But it is lead plaintiff's sole responsibility to supervise class counsel, thus ensuring the best interests of the class drive all decisions. By delegating this fundamental litigation responsibility to a non-class-member third party, Galla and Yuan propose abdicating the core role of the lead plaintiff whenever the two of them cannot reach agreement on a decision. Nothing in the PSLRA supports the notion of

allowing a non-class member third-party to play such an important role in the prosecution of the litigation. Moreover, this provision—which seems to be "boilerplate" included in many joint declarations prepared by Levi & Korsinsky—proposes the inefficiency of side litigation in the event that Galla and Yuan cannot agree on how to litigate the action. *See Tan*, 2020 WL 1031489, at \*4 n.6 ("As further evidence of the boilerplate nature of the Joint Declaration, the court notes that the NIO Investor Group's members have determined to resolve any disputes as to how to proceed by means of a majority vote and, "in the event of a deadlock," to present their views to a neutral arbitrator…. Setting aside the fact that the side litigation contemplated by this provision would necessarily create inefficiencies in the prosecution of the action were the NIO Investor Group appointed lead plaintiff, it is unclear to the court how a group of five could conceivably 'deadlock.'"). This weighs considerably against their adequacy (and should, on its own, disqualify the Galla and Yuan group from lead plaintiff consideration).

Galla and Yuan's joint declaration demonstrates them to be highly educated individuals, but there is little besides their own consideration of themselves as sophisticated investors to support a conclusion that they are indeed sophisticated. They have each "invested" for significant lengths of time, but there are no additional details from which the Court can determine them to be sophisticated in how they invest. *See* ECF No. 13-4. Demonstrating adequacy and typicality is the movants' burden. Because the scant facts Galla and Yuan offer fail to demonstrate their sophistication, this cannot weigh in favor of adequacy.

Finally, the facts presented in the joint declaration lead to the undeniable conclusion that counsel—rather than Galla and Yuan—are behind the formation of the group. The joint declaration makes clear that Galla and Yuan learned of each other through counsel and first spoke to each other (with counsel on the line as well) on the afternoon of the day lead plaintiff motions were due.

7

ECF No. 13-4, ¶¶8-9. Galla and Yuan have presented no facts even suggesting that they independently decided to form a group. *Cf. Jakobsen*, 2019 WL 1522598, at *4 ("Fourth, and most importantly, the joint declaration is silent on whether '[the Wan Group's members] formed this group independent of counsel.' In fact, the joint declaration suggests otherwise when it states that the Wan Group's members consulted their counsel '*before* the Motion was filed on [their] behalf.' This statement underlines that the individual members of the Wan Group selected their counsel before coming together as a group, which means that they 'have failed to meet their evidentiary burden to prove that their grouping was not the product of lawyer-driven litigation.'") (citations omitted). "This weighs heavily against the [Galla and Yuan] Group's motion because Congress intended plaintiffs, and not their lawyers, to drive securities class actions under the Private Securities Litigation Act of 1995." *Id.*

Consideration of the *Varghese* factors leads the undeniable conclusion that the Galla and Yuan Group has failed to demonstrate its adequacy to serve as lead plaintiff. For these reasons, the Galla and Yuan Group's motion should be denied.

**B.      Mr. Bhagat—Who is Typical and Adequate—is the Presumptive Most Adequate Plaintiff, and No Evidence Rebuts that Presumption**

To be designated the presumptively most adequate plaintiff, Mr. Bhagat must "satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(cc). Mr. Bhagat is typical of the putative class because he purchased or acquired Ebang securities during the Class Period at artificially inflated prices, was damaged thereby, and his claims arise from the same course of events and are similar (if not identical) to those of the class. *See* ECF No. 14, at 6. Mr. Bhagat is an adequate class representative because his interests are aligned with those of the class and he has selected highly-qualified counsel to represent him and the class. *Id.* at 6-7. Moreover, Mr. Bhagat has provided the Court with a Declaration setting forth his ability and willingness to serve as Lead Plaintiff,

detailing his education and work history, investing experience, his understanding of lead plaintiff duties, and his diligence in selecting counsel. *See* ECF No. 15-4. Mr. Bhagat is the judicious, diligent lead plaintiff envisioned by the PSLRA and its drafters.

**III.     CONCLUSION**

Mr. Bhagat is the most adequate movant seeking to be designated. The Galla and Yuan Group is clearly inadequate to represent the class, and every other movant besides Mr. Negahban has withdrawn their motion or otherwise noticed non-opposition. Because Mr. Bhagat's financial interest is significantly larger than Mr. Negahban's interest, and Mr. Bhagat is otherwise adequate and typical, he respectfully submits that he should be appointed lead plaintiff.

Dated: July 7, 2021                                    Respectfully submitted,

*/s/ Jeffrey C. Block*
Jeffrey C. Block
**BLOCK & LEVITON LLP**
260 Franklin St., Suite 1860
Boston, MA 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockleviton.com

*Attorney for Mr. Bhagat and*
*Proposed Lead Counsel*