L7LCzakC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

TOMMIE ZAKER, Individually and
On Behalf of All Others
Similarly Situated,

              Plaintiffs,

       v.                21 CV 3060 (KPF)

EBANG INTERNATIONAL HOLDINGS
INC., DONG HU, and LEI CHEN,

              Defendants.

------------------------------x

                          New York, N.Y.
                          July 21, 2020
                          10:00 a.m.

Before:

              HON. KATHERINE POLK FAILLA,

                          District Judge

                  APPEARANCES

LEVI & KORSINSKY LLP
    Attorneys for Movant Dr. Gowrisankar Naidu Galla, GALLA
Investments Inc., Yan Yuan
BY:  GREGORY M. POTREPKA

BLOCK & LEVITON LLP
    Attorneys for Movant Brijesh Bhagar
BY:  JEFFREY C. BLOCK

POMERANTZ LLP
    Attorneys for Movant Xiande Yang
BY:  JOSEPH A. HOOD

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

L7LCzakC

(Case called)

MR. POTREPKA:  Good morning, your Honor.  Gregory Potrepka on behalf of Dr. Gowrisankar Galla, GALLA Investments Inc., and Mr. Yan Yuan.

THE COURT:  Sir, good morning to you and thank you very much.

MR. BLOCK:  Good morning, your Honor.  Jeffrey Block with Block & Leviton for movant, Mr. Brijesh Bhagat.

THE COURT:  Thank you very much.  Good morning to you, as well.

I'm sorry, sir, that there is only one of you at the back table.

MR. HOOD:  It's quite all right, your Honor.  Good morning.  Alexander Hood of Pomerantz LLP on behalf of lead plaintiff movant, Xiande Yang.  Happy to be here in person.

THE COURT:  All right.  We are here to deal with several motions to appoint an interim lead class plaintiff and lead class counsel.

Mr. Hood, let me please begin with you, sir.  May I understand your client's position.  Is it, at this stage, nonopposition to either of the clients represented by the attorneys in the front table?

MR. HOOD:  Not precisely, your Honor.

THE COURT:  Please, then, I would love to know.  Thank you.

L7LCzakC

          MR. HOOD:  Certainly.  It's our view the Galla group appears to be the presumptive most adequate plaintiff within the meaning of the PSLRA, given their financial interest and given the fact that they appear to have prima facie satisfied in that proceeding that the penalty shows.  In addition, one movant of the group individually appears to have financial loss.  Accordingly, we do not oppose their motion.  Our position, your Honor and we could have stated this more clearly, but we didn't --

          THE COURT:  Not at all, sir.  I'm just happy to have you here.

          MR. HOOD:  Should the Court be disinclined to appoint a group or to appoint any member of that group individually, then, under the PLSRA's inquiry, the analysis would then turn to our clients.

          Mr. Yuan has alleged, the next largest, another member of the Galla group is under consideration, either collectively or individually.  And likewise, Mr. Yuan, his prima facie demonstrated his adequacy and totality, and no one has argued otherwise.

          Our position is we do not oppose the Gallagher's motion and we believe that we would become presumptive most adequate plaintiff if, for whatever reason, the Gallagher's motion was not granted.

          THE COURT:  Thank you.  Sir, I believe your client is

L7LCzakC

also involved with the Zeva litigation in the District of New Jersey, as I mentioned some of the folks here are.  Could you talk about, please, the progress of that litigation.  To the best of my understanding and reading of the docket, I think the case was reassigned, first of all, earlier this month, and I don't believe that the motion, analogous to this motion, has been resolved.  Could you tell me about that case, please.

MR. HOOD:  Certainly.  I think your Honor summed it fairly succinctly.  That case had a more accelerated briefing schedule, motions there have been fully briefed.  As I understand it, all of us here are involved in that case, as well.

That said, to my knowledge, there has been no hearing scheduled in the District of New Jersey.  As a consequence of the reassignment, I would expect some further delay there.  So the fact of it is, in brief, it's been fully briefed, motions are made pending, there has been no decision.

THE COURT:  I'm sure you'll understand what this particular line of questioning is coming from, but is there an indication, either from folks in this case that they would seek to transfer the case to the DNJ or, conversely, a desire to move that case over here?

MR. HOOD:  Well, your Honor, I think this has been our first opportunity to really be in a room with all the other litigants and potentially discuss that issue.  We fully agree

that these are to proceed in one forum, parallel.  Duplicative litigations here don't make any kind of sense.  If the consensus emerges that the Southern District is where we would all like to see this, then we're of course prepared to take whatever procedural steps we need to make that happen, whether that's voluntary dismissal or transfer or whatever else makes sense judicially.

THE COURT:  Thank you.  Mr. Hood, I might have more questions for you, but I'm going to turn to the folks in the front row, and I do appreciate it.

MR. HOOD:  Thank you, your Honor.

THE COURT:  Mr. Potrepka, let me please speak with you, sir.  If you would like to add on or provide your thoughts on any of the things that Mr. Hood was just discussing with me, why don't we begin with that now.

MR. POTREPKA:  Sure.  I think it makes sense to start with jurisdiction.

THE COURT:  Yes, sir.

MR. POTREPKA:  Just because that was the last thing that we were talking about.  I think, at this point, your Honor, no party or lead plaintiff movant has contested that this Court has jurisdiction to appoint a lead plaintiff under the federal securities laws.  The federal securities laws jurisdiction statute is very broad.

Dr. Galla and Mr. Yuan have not filed a complaint yet

L7LCzakC

or have been appointed lead plaintiff.  Therefore, I wouldn't say that it makes sense to stake out a position on whether it was proper to bring a case in the Southern District of New York or New Jersey, but if appointed by your Honor as the lead plaintiff, it would certainly take whatever steps are necessary to consolidate the two actions, whether that be through a motion through transfer or a voluntary dismissal.

Again, I think that it is perfectly logical and appropriate for the Court to decide the lead plaintiff motion, given that defendant's alleged misstatements were disseminated in this district, and the defendant, Ebang's ordinary shares are traded on an exchange in this district.

THE COURT:  But as you've just said, your client is not, today, involved in that New Jersey action?

MR. POTREPKA:  We have filed a lead plaintiff motion in that action.

THE COURT:  Excuse me.  Yes.  That's right.  Thank you.

MR. POTREPKA:  But we did not file the underlying complaint in this action or in the New Jersey action.

THE COURT:  Yes.  I appreciate the clarification.

MR. POTREPKA:  Your Honor, I would proceed to a presentation on why my client should be appointed the co-lead plaintiffs.

THE COURT:  Certainly.  May I just ask a more factual

L7LCzakC

question.

MR. POTREPKA:  Sure.

THE COURT:  At times, it appears that you treat, is it Dr. Galla and the GALLA Investments entity as a single thing, at sometimes they are two different things that have been enjoined with movant Yuan as a group.  I am trying to make sure that I understand the relationship between Dr. Galla and the investment entity.

MR. POTREPKA:  Sure.  Dr. Galla has full investment control over movant GALLA Investments Inc.  It's his investment vehicle and he was the individual who made the trades.  It's just that there were different brokerage accounts, your Honor, one is in his individual name and one is in the name of GALLA Investments Inc.

I think that movant Bhagat has acknowledged that this is really a two-movant group; that was in their opposition at page 2.  There are three legal entities, but Dr. Galla has control over the brokerage accounts in his own name and with respect to GALLA Investments Inc.

THE COURT:  Well, one of the things that Mr. Block is noting in the reply papers is that you haven't sought to disaggregate the group.  As I understand it — and this is what we'll be exploring today — Dr. Galla, individually, has the greatest losses of any single investor who has propounded themselves as a potential lead plaintiff in this case.

L7LCzakC

So, I can think of this in several ways. So I thought one would be what if I just considered Dr. Galla by himself; what if I consider Dr. Galla and the GALLA Investment entity that he, as you now say, has full investment control over; and what if I consider Dr. Galla, the investment entity, and movant Yuan?

What I thought I understood your adversary, for this purpose, to be saying is that you have gone all in on the three-party lead plaintiff, and you rise or fall on the success of that, and he believes that you fall because he believes that it was put together by attorneys and there are other deficiencies in it. I think he is right that I haven't seen you say, in substance, look, if you have a problem with our aggregating, then we can disaggregate and just consider us individually. So I would like to know whether that is a position of yours, and if so, tell me about it now.

MR. POTREPKA: Your Honor, I think, in the papers, it's true, that we do not have a position in the papers that says you need to disaggregate, because we don't think that the law requires disaggregation. I do think if that was your Honor's preference, there is no binding Second Circuit authority that says you couldn't do that and you couldn't take Mr. Galla and his investment vehicle's losses and separate them from Mr. Yuan. I think that your Honor has seen the briefing, and there is an acknowledged split among district courts as to

L7LCzakC

some judges prefer disaggregation of movants and some find it acceptable to aggregate small groups of movants, like presented by my client's group.

I think it's accurate to say that we have not said you have to take Mr. Galla and look at him in a second instance as isolated, and that would be something that you should appoint if you were disinclined to do a group appointment.  I think that if that was your Honor's preference, there is no authority stopping you from doing that.

THE COURT:  Well, I believe I understood I could, if I wanted to, disaggregate *sua sponte*, if I thought it was appropriate.

I don't want you to read too much into my questions. My point is, the reply papers that I received from Mr. Bhagat suggested that a failing of your briefing was to speak only in terms of the aggregated group and not in terms of the possibility of disaggregation in the alternative.  That's what I'm exploring with you now.

MR. POTREPKA:  Yes.  I don't think that's a failing for two reasons:  One, because I disagree that disaggregation of groups is necessary; and two, because I don't think that there is any legal impediment to your Honor's discretion to disaggregate if that is really what you were inclined to do.

THE COURT:  I'll hear from you now on your oral presentation.  Thank you.

L7LCzakC

MR. POTREPKA:  Thank you, your Honor.  I should have said earlier, I don't think I identified, I am with counsel with Levi and Korsinsky.

THE COURT:  Yes.

MR. POTREPKA:  Your Honor, we have discussed today that today's matter is a hearing on competing motions filed pursuant to the PSLRA to seek appointment as lead plaintiff in the securities fraud class action.

As your Honor noted, there is a case filed in this district, which we are here today to argue, and there is a second district, in the District of New Jersey, captioned Konstantin Zeva v. Ebang International Holdings Inc.

We have spoken as to jurisdiction and with respect to the appointment of the lead plaintiff.  The process for appointing a lead plaintiff under the PSLRA is straightforward.  According to the statute, the movant with the largest financial interest who has otherwise made a prima facie showing of typicality and inadequacy under Rule 23 is the presumptive lead plaintiff.  The presumption can only be rebutted with real proof that the movant is atypical or inadequate and the speculation and hypothetical concerns do not suffice to rebut the presumption.

In its determination of the lead plaintiff, the framework for the PSLRA is for the Court to consider each movant one at a time, starting with the movant with the largest

L7LCzakC

financial interest.  Here, that movant is the group of my clients, Dr. Galla, his investment company, and Mr. Yuan.

Dr. Galla and Mr. Yuan timely filed a motion for appointment as co-lead plaintiffs on June 7th, and with that motion, they filed a chart explaining their method for calculating their financial interests, which is at docket number 13-2.  Your Honor, our financial interest chart explains in great detail that Dr. Galla and Mr. Yuan suffered losses of over $1 million when considering a straightforward last-in, first-out accounting methodology, and over $972,000 when you exclude losses that were realized before the alleged actual disclosures.  Dr. Galla alone has the largest individual loss of any individual lead plaintiff movant.

At this juncture, the only movant challenging my clients is Mr. Brijesh Bhagat.  Mr. Bhagat's opposition memorandum does not contest that my clients have the largest interest, nor could it.  Mr. Bhagat's motion argued that losses with correct metric to consider when assessing a movant's financial interest and Mr. Bhagat claims a financial interest of approximately $253,000, and that is including losses before an alleged partial disclosure, what are called in-and-out losses.  Thus, individually, both Dr. Galla and Mr. Yuan have larger individual losses than Mr. Bhagat.  Collectively, they have over three and a half times larger losses than Mr. Bhagat's claimed loss, which includes those in-and-out

L7LCzakC

losses.

The group has also demonstrated that it is typical and adequate.  It is a small group of investors, a group of this size that courts in this district and across the country find presumptively cohesive.  This Court, in cases like the TG Therapeutics case, the Meadowbrook Insurance case, the Chipotle Mexican Grill case, and the Tile Shops case, like many others in this district and across the country, has appointed small groups as co-lead plaintiffs in securities fraud class actions.  This is consistent with the text of the PSLRA, which explicitly allows a group of persons to be appointed the lead plaintiff, which, in fact, the Supreme Court, in 2018, recognized in the China --

THE COURT:  Let's pause for a moment, sir.  One of the things that causes me some concern is the fact that Galla and Yuan did not appear to know each other, other than finding out about each other through counsel.  I don't know that there is more than, sort of, conclusory pact statements about their ability to work together and their plans for how to work together.  So, I have some concerns about the cohesiveness of the group as a group.  Could you help me to better understand your position with respect to my concerns.

MR. POTREPKA:  Yes, your Honor.  I think, as a preface, that was true in some of the other cases that we have cited.

L7LCzakC

With respect to facts in this particular case, this just isn't a situation where my clients were cobbled together against their wishes or there has been any lack of cohesion whatsoever.  The only proof submitted in this case, in the motion papers, is that both Dr. Galla and Mr. Yuan retained my firm and they wanted to seek appointment as lead plaintiff.  They communicated with each other on a conference call prior to moving for appointment as co-lead plaintiffs.  They submitted joint declarations with their motion papers in this case and in the New Jersey action.  Then, after learning of arguments made by Mr. Bhagat, Dr. Galla and Mr. Yuan submitted a second joint declaration in the New Jersey action, which is at docket 25-2 in the New Jersey action.

So, there were a large number of potential lead plaintiffs, a large number of class members who called our firm after notice was issued.  A large volume of interested class members is not uncommon in a case like this where there is one or more significant stock trots and serious allegations alleged in investigative journalism cases, like the Hindenburg research report alleged here.

Both Dr. Galla and Mr. Yuan were among those investors who contacted my firm, and we observed they have very significant losses, but they were both very interested.  Because of their significant financial interests to be a lead plaintiff, they were motivated by that to be a lead plaintiff.

L7LCzakC

They both retained my firm and we asked their permission to explore the possibility to work together.  Because of their strong desires to be lead plaintiff, co-lead plaintiffs, they decided and agreed that it was the best course of action to work together.

As stated in the joint declaration, Dr. Galla and Mr. Yuan demonstrated they have an ability and desire to work together cooperatively and to serve as a lead plaintiff and oversee this litigation and my firm.  Both group members understand their duties as a class representative, they agreed to work cooperatively and to obtain the highest possible recovery, if any, for shareholders.  They agreed and exchanged contact information and have communicated with each other regarding the case.  They discussed plans to stay in contact and be actively involved.

Dr. Galla is a medical doctor with 20 years of investment experience, and Mr. Yuan has a master's degree in economics and worked in managerial positions at a large publicly traded company, and has been investing for a number of years, five years.  These are not the types of clients, your Honor, that would be unwittingly duped by myself or my cocounsel into being a lead plaintiff.

They both discussed a mechanism for dispute resolution, they discussed how attorneys' fees would be awarded, and what Levi & Korsinsky could seek if this case was

L7LCzakC

successful, subject to your Honor's approval, and they discussed that they wanted to select Levi & Korsinsky to represent this case who has significant experience in cases like this.

The only thing that Mr. Bhagat alleges against my clients is not actual fact, that they are somehow cobbled together or that this has been a lawyer-driven process or that they will have some sort of disagreement in the future.  All that has been alleged against my clients is speculation.  There is no support of actual proof.  The only proof, as I just discussed, is supportive of the fact that this was not a lawyer-driven process.  My clients demonstrated that they were able to oversee and act collaboratively and cohesively.  In fact, in the group's second declaration, which was filed in the New Jersey action, our clients indicated that they were aware of Mr. Bhagat's concerns and that they believed it was very unlikely that they will have any sort of irreconcilable disagreement.  They know how to act civilly and as a team on behalf of the putative class.

In my experience, plaintiffs like to work together to prosecute their cases against defendants.  I've had other cases, including in this district, with small groups of this size and have seen no animosity among co-plaintiffs, and they've worked together and successfully prosecuted cases to resolution that were favorable to the class.

L7LCzakC

Moreover, our briefing aside --

THE COURT:  Sir, if you could just pause for a moment.

MR. POTREPKA:  Yes, your Honor.

THE COURT:  The joint sworn statement of your clients to which you referred that was filed in the New Jersey action, what is the analogous docket number in this action, sir?

MR. POTREPKA:  The docket number in that case --

THE COURT:  In this case, please.

MR. POTREPKA:  In this case?

THE COURT:  Yes.  Has it been filed yet?

MR. POTREPKA:  It has not been filed.  I apologize.

THE COURT:  Was I supposed to be looking through the New Jersey docket to find out what your client said there?

MR. POTREPKA:  I apologize, your Honor.  It was cited in our opposition brief.

THE COURT:  Yes.  It wasn't filed?

MR. POTREPKA:  It was not filed.

THE COURT:  Right.  So let me tell you that I have read the opposition brief, but I did not go trace out the New Jersey docket.  So, if I'm supposed to, if you think, legally, I should be looking there, okay, but I think it would have been better for you to have actually included it as exhibits to -- I believe this is your reply memorandum of law in response to competing movant Brijesh Bhagat's opposition; correct, sir?

MR. POTREPKA:  No.

L7LCzakC

THE COURT:  Which one are you speaking of, please?

MR. POTREPKA:  I was speaking as to the opposition filed by our -- the opposition is docket number 37.

THE COURT:  Thank you.  I'm there.

MR. POTREPKA:  This is on page 3 in footnote 2, we cite to the second joint declaration.  I apologize, your Honor, that it is not on your docket.

THE COURT:  Yes, I see it.

MR. POTREPKA:  I think the point here is that my clients have considered the argument made against them that they would not act in a manner that would be cohesive and they just don't agree that that is something that would be the case.

I would also add, your Honor, that my clients have probably provided the Court with the most information of any movants in this case about how they would act together amicably and on behalf of the class.  A lot of the same information that is being discussed as insufficient for the Court's consideration to make that determination is the same types of information that is in Mr. Bhagat's own declaration.  He says "his occupation" and "his investing experience" just like my clients do.  I think that your Honor does have sufficient information to determine their prima facia typicality and adequacy.

THE COURT:  I did not understand counsel for Mr. Bhagat to be saying that each of the individual

L7LCzakC

constituents in your proffered group was an inadequate plaintiff or at least someone who couldn't be considered.  I thought what he was saying was that the two people in the one entity have been just put together as a convenience to the attorneys and as a stratagem of the attorneys, and that is what renders them an inappropriate lead plaintiff group for this case.  I'm not saying I agree, I'm just trying to explore it.

So, to the extent you're saying a lot of the things that Mr. Bhagat is saying is what your client is and declarations, yes.  But I think the point is, he's saying, as an individual, he has, of necessity, no conflicts with the other members of the group because it's just him.  But I do understand your point.

Perhaps I could hear from his counsel at this time, Mr. Block, and then speak to you again.  Thank you.

Mr. Block.

MR. BLOCK:  Good morning, your Honor.  Jeffrey Block on behalf of Mr. Bhagat.

Your Honor, let me focus on I think what the principal points of our opposition are.  Under the PSLRA, particularly in this district, when three unrelated investors --

THE COURT:  But two of them seem to be --

MR. BLOCK:  Two of them are -- I will agree with that.  But when another unrelated investor seek appointment together, it is their burden to establish that they are a proper and bona

L7LCzakC

fide group.  It is that aspect of the motion that we are challenging.

One of our arguments that we've made is that this is a group that was cobbled together by the lawyers.  What Mr. Potrepka just told us during the argument is he said a large number of class members called the firm.  So there are a lot of different potential group members that called the firm.

So what happened was the firm said, oh, we've got Dr. Galla and Mr. Yuan, who both lost a lot of money, let's have them be the lead plaintiff.  What you have is a hastily arranged eleventh-hour call literally on the day the motion is due.  I know Mr. Potrepka has said it was a conference call, and I'll take him at his word, maybe I'm nitpicking a little bit, but it says we communicated with one another, but I'll take him at his word.  They say we just met each other, our lawyers told us that we should move together, and they said we're confident we can work together, even though they just met each other.

One of our principal oppositions is the provision, in the event that you have two people and they reach a disagreement, that they've agreed, well, we're now going to go higher and submit this to an independent arbitrator and let the arbitrator decide what we should do.  We find that so antithetical to the purposes behind the PSLRA.  It's the client that's in control.  So, the fact that there is now going to be

L7LCzakC

some arbitrator deciding something to me raises a whole host of questions.

First of all, who picks the arbitrator. Is it Levi & Korsinsky or is it the clients and what if they don't agree on the arbitrator? Who's going to pay for the arbitrator? Again, I presume the possibility of Levi & Korsinsky, who, if there is a recovery in the case, would then ask the class to pay for it.

The next question is, does Dr. Galla and Mr. Yuan have to go hire their own lawyers to present their views to the arbitrator or are they now going to start arguing why their positions should be favored by the arbitrator? And it's binding arbitration. So what if the arbitrator doesn't agree with either of them and picks a third position?

So, you've got clients who, right from the get-go, right from the start have said, if we can't agree, we're just going to let somebody else decide it. We're going to abdicate our role.

THE COURT: Let's please pause there for a moment. We don't know today whether there will be disagreements. I would think, even in interim lead plaintiff groups who are not cobbled together by attorneys who have reasons to believe that they've worked together for some period of time and can continue to work together, there remains, I suspect, the possibility that their interest might diverge or their views might diverge as the litigation progresses. So why shouldn't I

L7LCzakC

be complimenting the Levi firm for recognizing that possibility and putting in place a mechanism to deal with it?

What you're saying, sir, is thoughtful, and I understand it.  I'm just wondering if it's a criticism that can be levied at all plaintiff groups.

MR. BLOCK:  Well, your Honor, I agree with you that, from the start, there is no reason to think or we're speculating that there would be a disagreement and it will have to be decided by somebody else.

What I have seen in most of lead plaintiff groupings, and we have done this in our own groupings, is there is a vote. If it's an odd number of lead plaintiff movants, it's majority rule.  What I've also seen is it's weighted on the investors' losses.  So, it still keeps control in the hands of the clients.

What a lot of the cases talk about when they look at a proper group is, do you have a proper mechanism or good mechanism to resolve a dispute that may come up.  I think that the mechanism that was put in place here, which is, you know, you've seen a number of the cases in the papers, it seems to be a mechanism that Levi & Korsinsky in particular uses in all their groups, suggesting to me that it's boilerplate, which is exactly what the court in the Eastern District found, said it looks like this is a boilerplate to me.  But, again, it takes control away from the clients and it puts it in the hands of

L7LCzakC

somebody else.

We think that, under the PSLRA, the client is the one that should remain in control. For example, let's say the case moves forward, gets past a motion to dismiss and let's say the settlement discussions go on. Dr. Galla, who has a bigger loss, says, I think we should get more money. Mr. Yuan says, I think this deal is great, we should take it. We now stop the settlement negotiations to go to an arbitrator to let the arbitrator decide which is the right way to go. What if the arbitrator comes up with something different that either Dr. Galla or Mr. Yuan agrees to. To me, that is the problem, it's taking the control away from the clients. The whole point of the PSLRA was to put the clients in control. I think what it sort of does is it gives the lawyers a little bit more control than they should have.

I know your Honor said you have some concerns about the cohesiveness of the group. I think those concerns are valid. I think, when you look at this joint declaration, there is a lot of boilerplate in there, not just this arbitration that we see in a lot of the Levi Korsinsky declarations. But, just for example, and this is at their paragraph 15, one of the things they say is we have implemented communication procedures to ensure that we can quickly communicate and make decisions on short notice.

THE COURT: I just assumed that meant they gave each

L7LCzakC

other's phone number and email information.  It sounds really important, but I thought they just exchanged contact info.

MR. BLOCK:  Right.  But I think if they have the burden, they would put it in here and say we've exchanged our numbers, we're going to talk to each other, and we're going to talk to each other outside of counsel.  It's little things.  I think looking at something in isolation may not be dispositive, but I think when you look at it as a whole, it is very generic and very boilerplate.  They really don't give concrete, specific examples of how they are going to oversee counsel, how they are going to remain in contact.  Are they going to have regular calls or just sort of whenever, or whenever their lawyers say you need to be involved.  I think that's the kind of thing that we, to us, it looks more like a boilerplate declaration and doesn't meet their burden.  Again, it's their burden.

THE COURT:  Let's pause for a moment please, sir. What if it were just Dr. Galla and the GALLA Investment entity? I don't think you would be making these arguments.  First of all, there probably wouldn't be an ADR provision because, presumably, he controls the investments of the entity, they're never going to be in dispute.

But I do think the arguments that you're making to me are less powerful if you consider them as to the individual constituents of the group or if you consider them as to

L7LCzakC

Dr. Galla and his investment arm.

Could you speak to that, please.

MR. BLOCK:  Sure, your Honor.  If it were just Dr. Galla and his investment group moving for lead or just Mr. Yuan moving for lead, we wouldn't be here today, we would not be challenging them.  We're challenging them because they came together as this group at the eleventh hour, as I think what we now know is cobbled together by the lawyers.  We have lots of calls from different clients, we picked out these two who have big losses and said we'll put you up.  They have what we think is fairly generic boilerplate declaration, which, again, I think is a very odd provision on how they're going to resolve any disputes, they're going to abdicate that role.  So, we think they don't meet their burden of showing that they're a proper group.  And I know your Honor started about, well, can I disaggregate.

THE COURT:  Yes.

MR. BLOCK:  I mean, certainly, you can.

THE COURT:  If I was going that way, what would be your opposition or your objections to it?

MR. BLOCK:  Sure.  I was going to tell you why I don't think you should.

Because I think, at the outset, what you see from Dr. Galla and from Mr. Yuan is sort of this abdication of their role and the client in charge.  It's the lawyers saying you two

L7LCzakC

should work together at an eleventh-hour phone call.  A boilerplate declaration, sort of this odd arbitration provision which sort of gives up their control over the case if there is a disagreement.

So I think, right out of the gate, what you're seeing from each of them is sort of an abdication of their role as they're lead plaintiff and they're in charge.  So, while you certainly have the discretion to disaggregate and to consider Dr. Galla, because he does have the largest loss here, with or without his investment group, I think the actions he has taken so far undercut his adequacy.

THE COURT:  That's interesting.  I don't know if you're being inexplicit, but you're saying that by agreeing with his attorney to explore the possibility of joining forces with movant Yuan, he has shown that he will not be an adequate representative for the class?

MR. BLOCK:  I think on the facts of this case, yes.

THE COURT:  And the inadequacy is shown by the fact that, despite his significant losses, he was willing to engage in an, as you say, eleventh-hour discussion about the possibility of joining forces with another person?

MR. BLOCK:  Yes.

THE COURT:  Can we imagine that, at the time that conversation was taking place, Dr. Galla knew that he had larger losses than Mr. Yuan.  So he knew he had more losses

L7LCzakC

than he, but perhaps he might not have known that he had the largest losses of any of the prospective movants to come forward.  So one can argue he or his counsel were trying to sort of ensure the likelihood of their appointment by joining together.

Does that, to you, suggest that he would be an inadequate representative for the class?  I could say he just wasn't psychic or wanted to be sure and wanted to do it that way.  But I want to understand your opposition, because it is grounded in his decision to join forces with Mr. Yuan.

MR. BLOCK:  I think you are correct, your Honor, in that, prior to filing the motion, no movant knows what any other movant's potential losses are, whether it's individually or in a group.  A movant will make a decision, like Dr. Galla, to say, should I move by myself or should I join forces with Mr. Yuan to ensure that I have the biggest loss.

I think, to me, the troubling aspect of this motion is it's the lawyers picking rich clients to put together on this call to move together.  So it sort of is suggesting that the lawyers are picking the clients.  The clients aren't picking the lawyers --

THE COURT:  Let's pause there.  They didn't reach out blindly to either Mr. Yuan or Dr. Galla.  It is Mr. Yuan and Dr. Galla who called the Levi & Korsinsky firm.  So you are correct that they may have selected among the individuals who

L7LCzakC

called them, but it is not as though they were reaching out to folks, cold calling people.  They are reaching out among a group of people who selected their firm as the firm they wanted to represent them.

MR. BLOCK:  Yes.  I agree, yes.

THE COURT:  So what's wrong with that?

MR. BLOCK:  That's okay, but it sort of, to me, suggests a little bit of an element of the lawyers picking which clients they want to put up as the lead.  I think, again, it's the eleventh hour, the last-minute phone call.  It's what I think is a generic boilerplate declaration, not really specific plans for how they're going to act together, oversee the case.  I think some of the declarations, joint declarations you see in some of the cases talk about much more specific, concrete information.  A lot of the courts that don't allow aggregation of groups are critical of what they call generic boilerplate declarations, which is what I think you have here.

So I think it's the way they went about forming the group and the specifics of the group that make this decision in this case improper.  Certainly, groups are allowed under the PSLRA.  There is no real requirement that says you have to have a preexisting relationship.  So, our position is not that all groups are improper.  What we're saying is, this group, the way it was formed and the way they've agreed to oversee the case is what makes it so that they have not met their burden to

establish that they're a proper group.  Because they moved together as a group, they should be considered together as a group.  If the group is not proper, their motion should be denied.  That's our --

THE COURT:  I appreciate that.  At some point, I do actually want to hear why your client is the best of the movants.  But earlier in this conversation, Mr. Hood suggested to me that while he and his client and his firm did not have an opposition to the Galla-Yuan group, if I were to look past the Galla group to your client, they had an opposition to that and believed that Mr. Yuan should be appointed instead.

Do you want to speak to that issue, please, sir.

MR. BLOCK:  Certainly.  Thank you, your Honor.

In the ordinary situation, if the Galla group is disqualified and not appointed, you would then go down the list and look to Mr. Yuan and he would have the next largest loss.  But it's sort of a very interesting situation here.  So Mr. Yuan's firm filed the complaint in New Jersey, filed lead plaintiff motions in both courts.  Then, in New Jersey, he filed a nonopposition and threw his support behind Dr. Galla.

I will note that of all the other movants that filed nonoppositions or withdrawals, none took any position supporting any particular plaintiff.  They just have a generic, if those people aren't found adequate, we're here, Judge, we can do it.  So I thought that was a little bit odd.  Then what

L7LCzakC

Mr. Yuan does, he pretty much abdicates anything in this courthouse.  He doesn't file any additional papers.

Obviously, Mr. Hood is here at today's hearing.  But, to me, it sort of suggests, is he really the person who wants to be the advocate for this class and push this case.  He's just content to sit back, not really do anything, and wait for others to do something.  I think the lead plaintiff should be the person who is going to be the advocate for a class.  I mean, they're representing the absent class members who lost money and they're going to try hard to recover.  I think showing, at the outset, that you're the one who's pushing for that, hard, shows your adequacy.  By sitting back and doing nothing, I think it says something about your adequacy and your ability or desire to be a vigorous advocate.

THE COURT:  Mr. Hood is here today, which would suggest that he's not sitting back and doing nothing for Mr. Yuan.  It was that he was perhaps strategic or cautious in his written submissions, but he is here, and he's here, and he's made very clear his position.  So I don't know what significance I should ascribe to his presence here today and his oral advocacy on the point.

MR. BLOCK:  I understand, your Honor.  He is here.  I acknowledge that.  That's what I can say about Mr. Yuan.  Otherwise, as we said in our opposition papers in New Jersey, we have no contest or reason to think that he would not be an

L7LCzakC

adequate representative but for what I just said.

As far as my client --

THE COURT:  Yes, please.

MR. BLOCK:  Mr. Bhagat is a pharmacist.  He lives in Michigan.  He provided a declaration, moving papers on telling you who he is.  He's got some investment experience.  He did buy and sell a lot of stock, but what I will note is that at the end of the period, he was long over 56,000 shares at a total cost of $538,000.

And I know somewhere, someone may have suggested, well, he's a daytrader.  A daytrader is someone who is in and out every day and doesn't hold a position.  Clearly, Mr. Bhagat held a long position, over half a million dollars, and the shares that make up that long position, he began purchasing in February of 2021 and he purchased throughout long before the end of the class period.  So he would not be a typical daytrader.

It's a loss for him.  He lost a lot of money.  It was quarter of a million dollars.  He was motivated.  He wants to bring this case, he wants to pursue it, and he wants to try to get back as much money as he can for this class.  That's why I think he would be adequate and typical.

THE COURT:  Thank you.  Is there anything else you would like me to know with respect to what your colleagues have said, who I've sometimes called adversaries in this proceeding,

L7LCzakC

but you understand the concept --

MR. BLOCK:  Sure.

THE COURT:  -- before I return to them?

MR. BLOCK:  Adversaries right now, but otherwise colleagues.

THE COURT:  Of course.

MR. BLOCK:  The only thing I would say on the jurisdiction, your Honor, is we think the case belongs here because the stock trades here.  We don't really see any connection to New Jersey at all for venue purposes.

Other than that, I have nothing else.

THE COURT:  I think by extension, sir, you are suggesting that I do have jurisdiction to hear today's motions?

MR. BLOCK:  Yes.

THE COURT:  I'm always troubled when someone would suggest that I don't.  So if you could confirm that you believe I do, that would be great.

MR. BLOCK:  I absolutely believe you have jurisdiction.

THE COURT:  Terrific.  Thank you very much.

MR. BLOCK:  Thank you, your Honor.

THE COURT:  Mr. Potrepka, is there anything you would like to say in reply?

MR. POTREPKA:  Yes, there are a few things.

First, I do think a lot of what counsel articulated

L7LCzakC

was speculation.  I was keeping note, but I lost count of the amount of times he said what if.  There were statements like "an element of" or "eleventh hour," and these are just innuendo, your Honor.

My clients wanted to have this sort of group.  We asked their permission to introduce them.  They were enthusiastic because they both have large losses and wanted to be involved in the litigation.  They willingly entered into this agreement, and that we held the call only proves that they could have articulated and voiced a concern if they didn't want to do this; that wasn't something that happened.

With respect, your Honor, to the arbitration agreement, I don't think Mr. Bhagat's argument rebuts Dr. Galla's and Mr. Yuan's adequacy --

THE COURT:  I have to say, sir, that that is one of the most troubling things of your presentation, is the arbitration agreement.  It seems to me that it should be majority rules and that, therefore, Galla should win because it's both Galla as a human being and Galla as an investment entity.  That's my view, which is probably incorrect.

But I didn't understand, when was there going to be an instance in which the two Galla folks, individual and corporate, were in disagreement, and why couldn't it be -- I suppose you're implementing the ADR provision because you're giving Galla and Yuan equal say when they have unequal shares.

L7LCzakC

MR. POTREPKA:  Your Honor, I think that this is certainly not a point of contention.  That there are other procedures, that counsel has used in other cases, says nothing to the fact that these clients decided that this was the best provision for mediating — hypothetical, let's keep that in mind.

THE COURT:  Yes, I did.  I spoke to your today adversary, tomorrow colleague, yes.

MR. POTREPKA:  Hypothetical disagreements.  This was the mechanism that they chose.  Your Honor, that they chose to proceed with this type of mechanism does not strip them of decision-making authority or something of that sort.  They agreed to approve the decisions of the arbitrator.  If they can ratify a decision of an arbitrator, it's not clear to me why that wouldn't be their decision.  That's their decision.  That they have disparate aggregate losses in absolute terms I don't think is an issue, because they've decided that it was appropriate to bring their perspectives together as two individuals who thought it would be helpful to have two sets of eyes looking at this case and proceeding as a group together.  They decided that this was the appropriate mechanism for them and they're allowed to make that choice.  I don't see that as being a problem.

THE COURT:  I'll let you continue, sir.

MR. POTREPKA:  The last point I think was a discussion

L7LCzakC

that your Honor and I were having before Mr. Block presented, and that was with respect to the clients' declarations.  I've tried to make a presentation that this was their decision, that this wasn't driven by the lawyers and that they wanted to proceed as a group, and that the declaration explains as much. I think that the declaration shouldn't be seen as boilerplate or insufficient because it is the most fulsome articulation of their intent of how they would proceed together and on behalf of the class.

As counsel notes, even if the Court were not to consider my clients or Mr. Yuan, Mr. Block's client, Mr. Bhagat, would still have to provide a showing of typicality and adequacy, a prima facie case — that's part of the statute. Mr. Bhagat's declaration apparently satisfies him that he made a prima facie case.

Our declarations are even more fulsome.  I think that that does go to show that they have submitted sufficient information to show that they're typical and adequate.  They have the largest financial interest in this.  I would submit that your Honor should appoint my clients as co-lead plaintiffs.  Thank you.

THE COURT:  Thank you so much.

Mr. Hood, I didn't realize your client was going to be implicated until I asked questions of Mr. Block about your client.  Do you wish to be heard on that or not?

L7LCzakC

MR. HOOD:  Your Honor, I'll just state very briefly that, as your Honor and Mr. Block have observed, I am indeed here on behalf of Mr. Yuan, who is an active and motivated litigant.  Thank you.

THE COURT:  Thank you very much.

Let me please do this.  I'm going to step off the bench for a few minutes.  I want to see if I can give a decision orally.  At this time, I ask four your patience.  If you need to step out for any reason, you have about five minutes to do so.

(Recess)

THE COURT:  My suspicion is that each of the attorneys in this room is very familiar with these standards for appointment of lead plaintiff and lead plaintiff counsel.  If I am too cursory, you'll tell me please and I'll go back.  I do think we all understand the playing field in which we're operating.

I also want to thank the three of you who have come in today to argue.  When I began looking at this motion, I had views, and my views have been sharpened, in some cases modified by this discussion.  So if you're wondering does oral argument work, yes, it does, and this is an example of it.  So I do thank you.

So, I believe the parties here are aware of the PSLRA and the process of setting up the protocols of the appointment

L7LCzakC

of lead plaintiff and lead plaintiff's counsel and the discussion of the rebuttable presumption, so I am going to skip over that, unless anybody wants me to.

In speaking about the largest financial interest, it turns out that the PSLRA does not specify a method for calculating which plaintiff has the largest financial interest. Many courts in this district have determined a prospective lead plaintiff's financial interest are linked into the Olsten/Lax factors. So, there are so many cases, citing this, but one would be *In re CMED Sec. Litig.*, 2012 WL 1138302, and the cases themselves, the underlying cases are *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, and *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286. These factors include the number of shares purchased, the number of net shares purchased, the total net funds expended by the plaintiff during the class period; and the approximate losses suffered by the plaintiff.

Courts agree, in the main, that the largest loss is the critical ingredient in determining the largest financial interest and it outweighs net shares purchased and net expenditures. That's discussed in *Richman v. Goldman Sachs Grp.*, 274 F.R.D. 473, a Southern District decision from 2011. Judge Engelmayer has also discussed this in a case called *Bo Young Cha v. Kinross Gold Corp.*, 2012 WL 2025850.

In calculating loss, courts in this district have a very strong preference for the last-in, first-out method of

L7LCzakC

calculating losses, the LIFO method.  The one case discussing that proposition is *Rosian v. Magnum Hunter Res. Corp.*, 2013 WL 5526323.

While, ordinarily, the Court would begin with a determination of which of two aspiring lead plaintiffs or lead plaintiffs groups has the largest financial interest, here that issue does not appear to be disputed.

Mr. Bhagat concedes that, under the metrics generally relied upon for courts in this circuit, the plaintiff group proposed by the Levi & Korsinsky firm has the largest financial interest if its members are permitted to aggregate their losses, but Mr. Bhagat has also conceded that Dr. Galla has the largest financial interest of any individual.

In the course of resolving these motions, I've reviewed the supporting documentation that the parties have submitted, and I don't find a basis to conclude otherwise.

Nonetheless, Mr. Bhagat argues that the Court should deny the motion of the Galla-Yuan group to serve as a lead plaintiff.  Finding or arguing that the group is nothing more than an eleventh-hour invention of its attorneys, fashioned for the sole purpose of aggregating losses in the hopes of winning the PSLRA's lead plaintiff contest.  I am quoting here from Mr. Bhagat's reply at page 2.

He further argues that although Dr. Galla individually has the largest financial interest, the Court should not

L7LCzakC

appoint him lead plaintiff because the group, the Galla-Yuan group elected to move for lead plaintiff as a group without knowing what any other movant's losses would be.  Because they moved as a group seeking to aggregate losses, they should be considered as an aggregated group.  Also from the reply brief.

As it happens, the PSLRA directs me to appoint as lead plaintiff the member or members of the purported plaintiff class that the Court determines to be most capable of adequately representing the interest of class members.  And this is 15, United States Code, Section 78u-4(a)(3)(B)(i).

The prevailing position is that unrelated investors may join together, with review on a case-by-case basis, if such a grouping would best serve the class.  This is principally discussed in a case called *Varghese v. China Shenguho Pharm. Holdings, Inc.*, 589 F.Supp.2d 388.  A proposed lead plaintiff group must make an evidentiary showing that its members will be able to function cohesively and to effectively manage the litigation apart from their lawyers.

Courts consider the nature of the group as a threshold question.  That's discussed by Judge Oetken in a case called *Peters v. Jinkosolar Holding Co.*, 2012 WL 946875.

To determine whether the unrelated members of the group will be able to function cohesively and to effectively manage the litigation apart from their lawyers, courts in this district consider the five *Varghese* factors:  The existence of

L7LCzakC

a prelitigation relationship between group members; the involvement of the group members in the litigation thus far; the plans for cooperation; the sophistication of the members; and whether the members chose outside counsel and not vise-versa.

Courts can deny a proposed group motion or can disaggregate the group *sua sponte* and consider its members individually where the group has failed to meet its burden with respect to the above five factors.

There are many, many cases discussing this, but some that I have found most useful are the *Peters* case I just mentioned from Judge Oetken; the *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F.Supp.3d 523, a Southern District decision from 2015; and *White Pine Invs. v. CVR*, 2021 WL 38155.

In looking at these, I understand and I asked Mr. Potrepka if I could find or if I could on my own disaggregate the plaintiffs group that he is proposing, and that is ultimately what I'm going to do *sua sponte*.

I believe that Galla and Yuan should be disaggregated, and let me explain why. They have no prior prelitigation relationship, and met through their counsel on the day that motions for lead plaintiff were due. That is something that was discussed by Judge Torres in the *White Pine Invs*. case.

Their joint declaration is, to my mind and as Mr. Block noted, somewhat cursory, providing a very modest

L7LCzakC

level of detail in their involvement in their counsel's actions in the litigation to date, and similarly vague discussions about their plans of future involvement in the litigation. I have no promise of regular status reports or regular conference calls. I have a generalized statement that they plan to, at some point, get status reports and have calls. Nor do I have from them a plan to consolidate or otherwise address the *Zeva* action in the DNJ.

This plan for cooperation also causes me concern as evidenced in my questioning of the parties. In addition to having modest detail under plans for cooperation, I am concerned, and I remain concerned about this idea of submitting disputes to the arbitrator. I do think that that betokens an abdication of the roles and responsibilities of a lead plaintiff, and that it could potentially harm the class by imposing an inefficiency into the decision-making process in the event of a disagreement. Worse yet, I'm allowing a nonclass member to make or to have undue influence in making key decisions on behalf of the class.

On the fourth *Varghese* factor, although neither Dr. Galla nor Mr. Yuan is an institutional investor of the type that the PSLRA is meant to attract, I do concede that Dr. Galla has 20 years' experience in managing his own investments, but I understand Mr. Yuan to have only five years of experience.

For me, as well, the fifth *Varghese* factor weighs

L7LCzakC

against aggregation.  Galla and Yuan have no prior relationship, met through counsel, and appear to have been introduced by counsel specifically for the purpose of winning appointment of lead plaintiff status.

So, I find that the *Varghese* factors weigh in favor of disaggregating Dr. Galla and Mr. Yuan, and I am permitted to do so.

But, this does not mean that Mr. Bhagat will leapfrog or that Mr. Yuan will leapfrog to the lead plaintiff position. Dr. Galla's losses are more substantial than either of Mr. Yuan, Mr. Yang, or Mr. Bhagat.  Everyone seems to agree that Dr. Galla, individually, has the largest financial interest.  Accordingly, I will appoint him lead plaintiff.

Let me pause for a moment and just note that, in this regard, this is where Mr. Block's arguments were most useful to me.

Mr. Block, everyone was good, but I really appreciate your argument today, and I look forward to other securities class actions where you are lead plaintiff counsel.  That may be cold comfort, but I really do mean it, because I really had to think about the arguments you were making about whether Dr. Galla's premotion conduct suggested he would not be an adequate lead plaintiff.  Ultimately, I concluded that it did not.  I do not fault Dr. Galla for being so interested in pursuing this on behalf of the class that he was willing to

L7LCzakC

join forces with another class member to present what they believed to be the strongest arguments.  From reading what I have read, I have every reason to believe that Dr. Galla will be an adequate lead plaintiff for the class.  But, again, I very much appreciated your arguments.

The final requirement of the PSLRA is that a potential lead plaintiff otherwise satisfies the requirement of Rule 23 of the Federal Rules of Civil Procedure.

Here, at the lead plaintiff stage, the proposed lead plaintiff need make only a preliminary showing that it, or in this case he, will satisfy the typicality and adequacy requirements of Rule 23.  I'm quoting here from *Sgalambo v. McKenzie*, 268 F.R.D. 170, a Southern District decision from 2010.

The typicality requirement is satisfied when the class members' claims arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.  I'm quoting here from Judge Oetken's *Peters* decision.

I do find that Dr. Galla's claims are typical, as he purchased Ebang securities during the class period at prices that are alleged to be artificially inflated by defendants' misrepresentations and/or omissions that form the basis of the action, and that he further alleges that he suffered substantial losses as a result of the alleged fraud in the

L7LCzakC

action.  His claims are based on the same events and assert the same legal theories as the class's claims.

I believe, as well, that he is an adequate representative for purposes of Rule 23 because he can fairly and adequately protect the members of the class.  There appear to be no conflict between the proposed lead plaintiff and the members of the class.  His selected counsel appears to be qualified, experienced, and able to conduct the litigation, and the lead plaintiff has a sufficient interest in the outcome to ensure vigorous advocacy.  I'm citing here to *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F.Supp.3d 390.

Dr. Galla satisfies each of the adequacy requirements. He has experienced substantial losses and he has a substantial interest in the outcome of this case.

Finally, the appointment of lead counsel, which is the related issue, is accorded to the most adequate plaintiff, conditioned upon court approval.  There is, in this district, a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection and counsel retention.  I quote here from the *Varghese* decision I mentioned earlier.

Dr. Galla has selected the Levi & Korsinsky firm to represent the class.  Levi & Korsinsky has included its firm's history, its ability to successfully litigate on behalf of the securities class action plaintiffs, and their experience as

L7LCzakC

class counsel in these types of actions.  I find, based on the exhibits I received, that the firm is qualified to serve as lead counsel in this action, and I approve Dr. Galla's choice of lead counsel.

I believe, therefore, that that resolves the motions.

I have to note, I'll repeat again my compliments to everyone, but there is a certain irony to me in as much as I don't believe anyone has appeared in this case on the defense side, so I didn't even have anyone.  So I will be sad, and perhaps you will, as well, if we go through all of this effort only to find ourselves with a default judgment at the end of all of this, but perhaps I'll hear from someone at some point.

Mr. Potrepka, the issue, I believe, is now that filing a consolidated amended class action complaint, and perhaps, as well, having some discussions with the DNJ litigants.

I can set forth a schedule today, but I would suggest, if you agree, if you want to consult with other folks involved in this case and in that case regarding the consolidated class action and a schedule for same.

MR. POTREPKA:  I believe that's prudent, your Honor. I think I would also like to reach out -- I know defense counsel has filed a stipulation in this case, although they have not appeared.

THE COURT:  Yes.

MR. POTREPKA:  So I imagine that we would be able to

L7LCzakC

get some input as to whether they intend to appear or a briefing schedule or something like that after we make arrangements for consolidation of the New Jersey action.

THE COURT: I appreciate that, sir. Let me just please look at my notes. This was the June document; correct? Actually, please don't worry about it. Actually, yes, it's Mr. Rimm at the Sullivan & Worcester firm. I don't believe Mr. Rimm has filed a notice of appearance, but you are absolutely right, that he is the signatory on the stipulation. So that at least gets me counsel for the entity defendant. I don't know that Mr. Rimm purports to represent the individuals involved.

What can I ask from you, sir? May I have a schedule in a week's time.

MR. POTREPKA: That would be fine, your Honor.

THE COURT: Let me please consult my own calendar. Excuse me.

Let's say, just because I'm feeling generous today, July 30th, sir, if I can have either a joint letter or a single letter just outlining the parties' positions.

MR. POTREPKA: Yes, your Honor.

THE COURT: If I could ask Mr. Rimm, while you're speaking with him, who, if anyone, is representing the individual defendants and whether or not perhaps -- I don't get the sense that they were served.

L7LCzakC

MR. POTREPKA:  I, too, will be interested in that, your Honor.  So I will be sure to ask those questions.

THE COURT:  With respect to the DNJ action, sure, I can keep the case here or it can go there, whatever folks think is best.  I just appreciate knowing that I have jurisdiction.

Sir, is there anything else you would like me to address today?

MR. POTREPKA:  Nothing further, your Honor.

THE COURT:  Mr. Block, anything else today, sir?

MR. BLOCK:  No.  Thank you, your Honor.

THE COURT:  Mr. Hood, anything else today, sir?

MR. HOOD:  No, your Honor.  Thank you.

THE COURT:  Again, it sounds so strange to say this, but I am so gratified to have you in my courtroom.  I'm just so gratified to have people in my courtroom.

All of that said, I wish to you, your clients, and your families a continued safety and good health during this pandemic.  We'll talk again.  We are adjourned.

* * *